FILED
2013 Dec-04  PM 01:18
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

JAMES K. BACOT, JR.,                )
                                    )
            Plaintiff               )
                                    )
    vs.                             )     Case No.  6:12-cv-02966-HGD
                                    )
MICHAEL J. ASTRUE,                  )
COMMISSIONER, SOCIAL SECURITY       )
ADMINISTRATION,                     )
                                    )
            Defendant               )

## MEMORANDUM OPINION

In this action under 42 U.S.C. §§ 405(g) and 1383(c)(3), plaintiff seeks judicial review of an adverse social security ruling which denied claims for disability insurance benefits (hereinafter DIB) and Supplemental Security Income (hereinafter SSI).  (Doc. 1).  The parties have consented to the jurisdiction of the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73.  (*See* Doc. 12).  Upon consideration of the administrative record and the memoranda of the parties, the court finds that the decision of the Commissioner is due to be affirmed and this action dismissed.

## I.     Proceedings Below

Plaintiff filed his applications for disability, DIB and SSI benefits on July 3, 2008.  (Tr. 44-45).  Plaintiff alleged an onset date of April 9, 2007, in both his DIB and SSI applications.  (Tr. 88).  These claims were initially denied on September 29, 2008.  On October 2, 2008, plaintiff requested a hearing before an Administrative Law Judge (ALJ).  A hearing was held before the ALJ on January 28, 2010.  In his July 8, 2010, decision, the ALJ determined that plaintiff was not eligible for a period of disability, DIB or SSI benefits because he is not disabled.  (Tr. 11, 14).  Plaintiff timely requested further review by the Appeals Council.  (Tr. 9-10).  On July 31, 2012, the Appeals Council denied the request for review.  (Tr. 1).  After the Appeals Council denied plaintiff's request for review of the ALJ's decision, that decision became the final decision of the Commissioner, and therefore a proper subject of this court's appellate review.  42 U.S.C. §§ 405(g), 1383(c)(3).

At the time of the ALJ's decision, plaintiff was 50 years old with a 12th grade education and past work as a warehouse worker, construction worker and cable installer.  (Tr. 39, 93).  Plaintiff alleges that he became disabled on April 9, 2007, when he was involved in an accident in which he was run over by a van.  This accident resulted in fractured vertebrae, herniated discs and a damaged nerve.  (Tr. 88).

On October 6, 2007, Dr. John Moody evaluated plaintiff.  (Ex. 12F).  Plaintiff reported low back pain and right shoulder pain.  He advised Dr. Moody that pain medication, such as BC Powder, helped to relieve the pain to some degree.  He also reported that he typically left his house two to three days per week and that he can perform household activities such as cooking, cleaning the dishes and laundry, although he takes somewhat frequent breaks.  He also indicated that he can perform heavier activities such as vacuuming and mopping.  Dr. Moody noted that it was likely that plaintiff has some degenerative disease with lumbar radiculopathy associated with pain radiating to the left leg.  With regard to the plaintiff's shoulder, no significant tenderness was present.  He did exhibit some symmetric decreased range of motion in the shoulders bilaterally.  (Tr. 250-53).

Plaintiff was examined by Dr. James Saxon on September 25, 2008, at the request of DDS (Disability Determination Service).  Plaintiff complained of chronic interscapular and lower back pain and left hip, leg and foot pain.  (Tr. 200).  Dr. Saxon noted that plaintiff had a two level degenerative disc bulging at the L4-L5 level and the L5-S1 level.  He also noted a possible tear in one of the intervertebral discs.  Dr. Saxon diagnosed plaintiff with chronic back pain with radiculopathy, marked dyspepsia, chronic right rib pain due to prior fractures and chronic right shoulder pain.  (Tr. 201).

On March 16, 2010, Dr. Bruce Romeo evaluated plaintiff, also at the request of DDS. His chief complaints were low back pain, left leg pain, and left-side rib pain. (Tr. 255). X-rays of plaintiff's right shoulder reflected mild degenerative AC (acromio-claviular) joint disease. (Tr. 261). X-rays of his lumbar spine reflect a mild narrowing of the L5-S1 disc space. The remaining spaces were well preserved. There was mild facet sclerosis at the L4-L5 level. (Tr. 262). Plaintiff was diagnosed with low back pain and left leg pain without objectively identifiable etiology. (Tr. 258). Dr. Romeo concluded that plaintiff could continuously lift/carry 11 to 20 pounds, occasionally lift/carry 51 to 100 pounds, and frequently lift/carry 21 to 50 pounds. (Tr. 263). He also concluded that plaintiff could sit, walk or stand for a total of eight hours in an eight-hour work day. He did not indicate that plaintiff had any other significant limitations. (Tr. 264).

The ALJ determined that plaintiff's medically determinable mental impairments of depression and anxiety cause no more than minimal limitation in his ability to perform basic mental work activities. Medical records from Whatley Health Services indicate a diagnosis of depression and/or anxiety, but they do not indicate any significant limitations or problems arising from any mental health problems.

Plaintiff testified that he has trouble sitting for long periods of time since his accident in 2007. (Tr. 31). He claims that he takes Lortab, Darvocet, Celebrex and Flexeril, prescribed by Dr. Long from Whatley Health Services, for the pain he

suffers, which he described as severe. (Tr. 32). He also alleges that he suffers from low back pain that continues down his left leg and sometimes bothers his right leg. As a result, he walks with a slight limp. He also has back and shoulder problems and "marked dyspepsia" or gastric reflux for which he takes medication. (Tr. 33-34).

Plaintiff testified that his daily activities include getting up and moving a little in the morning to keep from getting stiff, and then sitting down when he starts to hurt. He describes the pain as "feeling like needles and pins sticking in" his hips, like he is "sitting on a bed of nails." After awhile, it is necessary for him to lie down for an hour-and-a-half or two hours. However, this sometimes results in spasms. (Tr. 35). According to plaintiff, he "can probably lift a 10-pound bag of potatoes to put into the grocery cart, but that's just to lift it up to get it to the cart." He testified that he would not be able to take it very far. (Tr. 35-36).

The Vocational Expert ("VE"), Thomas Elliott, classified claimant's past work as a construction worker building homes as heavy, low-end, semi-skilled work with an SVP of 4. He described the claimant's past work as a cable installer as heavy, low-end, semi-skilled work with an SVP of 5. The VE also found that there were no transferable skills from any of this work to either the light or sedentary level. (Tr. 39).

## II.    ALJ Decision

Disability under the Act is determined under a five-step test.  20 C.F.R. § 404.1520.  First, the ALJ must determine whether the claimant is engaging in substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(i).  "Substantial work activity" is work that involves doing significant physical or mental activities.  20 C.F.R. § 404.1572(a).  "Gainful work activity" is work that is done for pay or profit.  20 C.F.R. § 404.1520(b).  Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities.  20 C.F.R. § 404.1520(a)(4)(ii).  Absent such impairment, the claimant may not claim disability. *Id.*  Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria listed in 20 C.F.R. § 404, Subpart P, Appendix 1.  *See* 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526.  If such criteria are met, the claimant is declared disabled.  20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis.  The ALJ first must determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite his impairments.  20 C.F.R. § 404.1520(e).  In the fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work,  20 C.F.R.

§ 404.1520(a)(4)(iv).  If the claimant is determined to be capable of performing past relevant work, then the claimant is deemed not disabled.  *Id.*  If the ALJ finds that the claimant is unable to perform past relevant work, then the analysis proceeds to the fifth and final step.  20 C.F.R. § 404.1520(a)(4)(v).  In the last part of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with his RFC, age, education and work experience.  20 C.F.R. § 404.1520(g).  Here, the burden of proof shifts from the claimant to the ALJ to prove the existence in significant numbers of jobs in the national economy that the claimant can do given the RFC, age, education and work experience.  20 C.F.R. §§ 404.1520(g), 404.1560(c).

Here, the ALJ found that plaintiff has not engaged in substantial gainful activity since April 9, 2007.  (Tr. 16).  Based on the evidence presented, the ALJ determined that plaintiff's "mild degenerative disc disease and lumbar disc bulging, and obesity" were medically determinable impairments. (Tr. 19).  The ALJ concluded that these impairments constituted severe impairments as defined by the Act.  (*Id.*).

The ALJ also found plaintiff's anxiety and depression to be "non-severe." (Tr. 17-18).  The ALJ noted that the evidence does not indicate that the claimant has any history of mental health treatment from a mental health professional.  The ALJ further noted that, although medical records from Whatley Health Services do indicate a diagnosis of depression and/or anxiety, they do not indicate any significant

limitations or problems arising from any mental health problems.  In addition, the ALJ noted that the claimant socialized appropriately with others, was able to concentrate, drive an automobile, prepare meals and take medication without reminders.  (Tr. 18).  Based on this evidence, the ALJ concluded that any mental impairments were "non-severe."  (*Id.*).

The ALJ also concluded that plaintiff "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926)."  (Tr. 19).

The ALJ began his RFC analysis by considering all the plaintiff's symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. §§ 404.1529 and 416.929 and SSRs 96-4p and 96-7p.  (Tr. 19).  The ALJ noted that, in considering the claimant's symptoms, he was required to follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce claimant's pain or other symptoms.  Second, the ALJ noted he was required to evaluate the intensity, persistence and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functioning.  According to the ALJ, for this purpose, whenever statements about the

intensity, persistence or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the statements based on a consideration of the entire case record.  (*Id.*).

The ALJ made the following findings:

The claimant testified that he has trouble sitting.  He said that he sits to one side, in order to take pressure off his hips.  He said that he has fallen while standing/walking.  The claimant testified that he has a history of two broken ribs on the right side.  He said that they still hurt when they are touched.  His pain is 9/10.  The claimant testified that he also has chronic lower back pain that radiates to his legs.  He said that he walks with a limp.  He also has rotator cuff problems with his right shoulder.  The claimant testified that he can grip things, but he would not trust his grip with weight in his hands.  The claimant stated that he has always been "skittish."  The claimant stated that if there are more than 4-5 people, he has to leave.

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

The claimant alleges problems with anxiety; however, for the reasons previously addressed, the claimant's mental health problems are found to not be severe impairments.  The claimant alleges lower back pain that radiates to his legs.  The claimant does have a history of ESI in the lumbar spine several years ago; however, the subjective medical evidence does not support the severity of the claimant's allegations.  X-rays of the lumbar spine on March 16, 2010, showed only mild degenerative disc disease and spondylosis.  In October 2009, medical records from Whatley Health Services indicate that the claimant had a lumbar MRI in August 2009 (Exhibit 10F).  This was noted to show only a broad based bulge at L5-S1, but no herniation.  When Dr. Romeo evaluated the claimant on March 16, 2010, no spasm was noted in the

claimant's spine.  He had a normal range of motion in the lumbar and cervical spine.  The claimant was able to stoop, kneel, crouch, and tandem walk.  The claimant was able to walk on his heels and toes.  The claimant had 5/5 motor strength in all muscle groups.  Sensory and reflexes were intact.  He had a normal grip strength at 5/5 bilaterally. Straight leg raise test was negative.  Doctor Romeo found that the claimant did not have any objectively identifiable etiology for his complaints of low back and leg pain.

The claimant also alleges problems with his right shoulder.  The claimant does have a history of right shoulder surgery in 2004; however, the objective evidence dos not support the severity of the claimant's allegations.  Shortly after the claimant's shoulder surgery in 2004, medical records supplied by Dr. Michael Marushack indicate that the claimant was doing well without any unusual complaints by March 15, 2004.  (Exhibit 2F).  X-rays of the claimant's right shoulder on March 16, 2010, showed only mild degenerative joint disease of the AC joint.  Doctor Romeo noted that the claimant had a normal range of motion in his shoulders bilaterally.  He had normal grip strength and motor strength.  Gross manipulation was intact.  No physician has given the claimant any permanent restrictions with regard to his shoulder.

The severity of the pain the claimant alleges is not consistent with the other evidence of record.  The claimant's ability to concentrate is not consistent with the severity of pain alleged by the claimant.  He completed his Function Report on his own (Exhibit 3E).  He stated that he does not need any reminders to take medication.  He prepares meals. He drives an automobile.  This includes driving 20 minutes, one way, to shop for food.  (Exhibit 3E).  This takes some ability to concentrate.  He stated that he is able to handle a savings account and use a checkbook. He indicated that he does not need a reminder to go places.  He stated that he has no problem with attention.  (Exhibit 3E).  He also reported that he has no problems getting along with others.  In addition, the person he lives with has Huntington's disease, and he helps to take care of her.  These activities are not consistent with the level of pain alleged by the claimant.

The record also indicates a diagnosis of obesity.  The record is inconsistent with any physician stating that the claimant's weight limits

or has resulted in impaired function. Though the claimant has this severe impairment, the record does not show that this impairment has impacted on his musculoskeletal system or general health as to cause his treating physician to diagnose him with impairments secondary to or in combination with obesity. Moreover, at the hearing, the claimant did not allege functional limitations due to his weight (SSR-02-01P).

In order to accommodate the claimant's back pain complaints, he is restricted to light exertional work. Despite the claimant's allegation of problems sitting and walking, the evidence does not support limitations in this regard. The objective medical evidence does not indicate any problems in this area, and no physician has restricted the claimant in this area. The evidence does not support any limitations regarding the claimant's shoulder. He had a normal range of motion, and x-rays showed only mild degenerative joint disease.

As for the opinion evidence, little weight is given to the opinion of the state agency as contained in Exhibit 8F. This is from a non-medical professional and additional evidence has been received since that time. Some, but not great weight is given to the opinion of Dr. Estock as contained in Exhibit 7F. Doctor Estock found that the claimant had no medically determinable mental health impairment. The medical records do show that the claimant has been noted to have some anxiety and depression, but the evidence does not support the conclusion that this is a severe impairment as previously addressed. Greater weight is given to the opinion of Dr. Bruce Romeo as contained in Exhibit 13F. Doctor Romeo had the opportunity to personally evaluate the claimant. His opinion is consistent with his examination of the claimant and with other medical evidence of record. The claimant, however, is given  some benefit of the doubt and he is restricted to light exertional level work. Doctor James Saxon opined that the claimant could no longer perform his past work as a cable installer. This opinion is given little weight, as this is an issue reserved to the commissioner.

(Tr. 19-21).

After consideration of this evidence, the ALJ determined that plaintiff's past

relevant work was medium or heavy exertional in nature. Since his residual

functional capacity is for no greater than light exertional level work, the ALJ found that plaintiff was unable to perform past relevant work. (Tr. 21). The ALJ also found that transferability of plaintiff's job skills was not material to the determination of disability because using the Medical-Vocational Rules supported a finding that he was "not disabled," whether or not he had transferrable job skills. (Tr. 21-22).

The ALJ concluded that, considering the claimant's age, education, work experience and residual functional capacity, there were jobs he could perform that exist in significant numbers in the national economy. (Tr. 22). In that regard, the ALJ stated as follows:

> In determining whether a successful adjustment to other work can be made, the undersigned must consider the claimant's residual functional capacity, age, education, and work experience in conjunction with the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2. If the claimant can perform all or substantially all of the exertional demands at a given level of exertion, the medical-vocational rules direct a conclusion of either "disabled" or "not disabled" depending upon the claimant's specific vocational profile (SSR 83-11). When the claimant cannot perform substantially all of the exertional demands of work at a given level of exertion and/or has nonexertional limitations, the medical-vocational rules are used as a framework for decision making unless there is a rule that directs a conclusion of "disabled" without considering the additional exertional limitations, section 204.00 in the Medical-Vocational Guidelines provides a framework for decision-making (SSR 85-15).

> Considering the claimant's age, education, and work experience, a finding of "not disabled" is directed by Medical-Vocational Rule 202.21 and Rule 202.14.

(Tr. 22). Based on this, plaintiff's claim was denied.

### III.    Plaintiff's Argument for Reversal

Plaintiff seeks to have the Commissioner's decision reversed.  Plaintiff argues that the ALJ failed to develop a full and fair record in that he erred in relying exclusively on the grids to find the claimant "not disabled," and in not asking the VE any hypothetical questions after the VE described the claimant's former jobs.  (Pl. Br. at 10).   In particular, plaintiff asserts that exclusive reliance on the grids is appropriate in cases that involve only exertional impairments.  Plaintiff notes that his pain is a non-exertional impairment which significantly limits his basic work activities such that reliance on the grids is improper, citing *Walker v. Bowen*, 826 F.2d 996, 1003 (11th Cir. 1987), and *Swindle v. Sullivan*, 914 F.2d 222, 226 (11th Cir. 1990).  According to plaintiff, because reliance on the grids was improper, the Secretary should have sought vocational testimony.  (Pl. Br. at 14-15).

### IV.    Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied.  *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Brown*, 792 F.2d 129, 131 (11th Cir. 1986).  Title 42 U.S.C. § 405(g) mandates that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  The district court may not

reconsider the facts, re-evaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

## V.   Discussion

When, as in the present case, a claimant is unable to do past relevant work, the examiner must determine whether in light of the RFC, age, education and work experience, the claimant can perform other work. *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002); *see also Crayton v. Sullivan*, 120 F.3d 1217, 1219 (11th Cir. 1997). The ALJ may determine whether the claimant has the ability to adjust to other work in the national economy by applying the Medical Vocational Guidelines (the

grids), 20 C.F.R. § 404, Subpart P, Appendix 2, or by the use of a vocational expert'
*Phillips v. Barnhart*, 357 F.3d 1232, 1239 (11th Cir. 2004).

The grids are a series of matrices which correlate a set of variables–the
claimant's residual functional capacity, age, education, background and previous
work experience.  Upon entry of a set of these variables into the appropriate matrix,
a finding of "disabled" or "not disabled" is rendered.  *Phillips*, 357 F.3d at 1240; *see
also Gibson v. Heckler*, 762 F.2d 1516, 1520 (11th Cir. 1985).

After determining a claimant's residual functional capacity and inability to
return to past relevant work, the ALJ may use the grids to determine whether other
jobs exist in the national economy that a claimant is able to perform.  *Id.*  A necessary
predicate for the use of the grids is a finding by the ALJ for each grid variable.
*Gibson*, 762 F.2d at 1520.  The grids are only applicable where each variable on the
appropriate matrix accurately describes the claimant's situation.  *Id.*

When a disability claimant cannot perform a full range of work at a given level
of exertion or has non-exertional impairments that significantly limit basic work
skills, exclusive reliance on the Medical-Vocational Grids to support a finding of
disability is inappropriate; the preferred method of demonstrating that the claimant
can perform other jobs is through the testimony of a vocational expert.  *Phillips*, 357
F.3d at 1242; *see also Wilson*, 284 F.3d at 1227; *Jones v. Apfel*, 190 F.3d 1224, 1229
(11th Cir. 1999); *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992).  Exclusive

reliance on the grids is not appropriate when the claimant is unable to perform a full range of work at a given residual functional level. *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995).

A full range of work means that the claimant is able to do unlimited types of work at the given exertional level. *Phillips*, 357 F.3d at 1241. Exertional limitations include the seven strength demands regarding the claimant's ability to sit, stand, walk, lift, carry, push and pull. *Id.* Non-exertional limitations or restrictions include mental and pain limitations, plus all physical limitations not included in the seven strength demands. *Id.*

Plaintiff alleges that he is in severe pain as a result of the accident in 2007. He rates his pain as 9/10 and notes that he is prescribed Darvocet, Lortab, Celebrex and Flexeril for pain. In addition, plaintiff alleges that he suffers from lower back pain that radiates down his left leg and causes him to walk with a slight limp. According to plaintiff, this pain makes it difficult for him to stand for extended periods of time and causes him to have pain and spasms when he sits or lies down.

A plaintiff's statements of symptoms alone are insufficient to establish a severe impairment. 20 C.F.R. § 404.1508 (2013) ("A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by your statement of symptoms"). A three-part "pain standard" applies when a claimant attempts to establish disability through his or her own

testimony of pain or other subjective symptoms.   The pain standard requires
(1) evidence of an underlying medical condition and either (2) objective medical
evidence that confirms the severity of the alleged pain arising from that condition, or
(3) that the objectively determined medical condition is of such severity that it can be
reasonably expected to give rise to the alleged pain.  *Wilson*, 284 F.3d at 1225; *see
also Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991); *Kelley v. Apfel*, 185 F.3d
1211, 1215 (11th Cir. 1999).  The ALJ does not have to recite the pain standard word
for word; rather, he must make findings that indicate that the standard was applied.
*Cf. Holt*, 921 F.3d at 1223; *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991).

In deciding to apply the grids in this case, the ALJ stated that he had
considered all the symptoms and the extent to which these symptoms can reasonably
be accepted as consistent with the objective medical evidence and other evidence,
based on the requirements of the applicable regulations.  In evaluating plaintiff's
symptoms, the ALJ noted that he is required to follow a process in which he must first
determine whether there is an underlying medically determinable physical or mental
impairment, *i.e.*, an impairment that can be shown by medically acceptable clinical
and laboratory diagnostic techniques, that could reasonably be expected to produce
the plaintiff's pain or other symptoms.

Second, once such an impairment has been shown, the ALJ stated he must
evaluate the intensity, persistence and limiting effects of the plaintiff's symptoms to

determine the extent to which they limit the claimant's functioning.  He further noted that, for this purpose, whenever statements about the intensity, persistence or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the statements based on a consideration of the entire case record.

The ALJ considered plaintiff's complaint that he has difficulty sitting, that he sits on one side in order to take pressure off of his hips and that he has fallen while walking/standing.  He also noted the plaintiff's complaint about pain caused by the broken ribs on his right side and that his pain level is 9/10.  He also acknowledged plaintiff's complaint of lower back pain that radiates down his leg, that he walks with a limp, has a rotator cuff problem with his right shoulder and does not trust his grip to hold any weight.  He also noted that plaintiff claimed to always have been "skittish" and would leave if more than four or five people were around.

After consideration of this evidence, the ALJ concluded that the plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms.  However, he further concluded that plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent that they are inconsistent with the above-referenced residual functional capacity assessment.

With regard to plaintiff's claim regarding lower back pain that radiates to his legs, the ALJ noted that plaintiff does have a history of ESI in the lumbar spine. However, the ALJ found that the subjective medical evidence did not support the severity of plaintiff's allegations. The ALJ noted that the x-rays of the lumber spine in March 2010 showed only mild degenerative disc disease and spondylosis. An October 2009 lumbar MRI reflected that plaintiff only had a broad-based bulge at L5-S1, but no herniation. When Dr. Romeo examined plaintiff in March 2010, no spasm was noted in plaintiff's spine. He also had a normal range of motion in the lumbar and cervical spine, was able to stoop, kneel, crouch and tandem walk, and was able to walk on his heels and toes. Dr. Romeo further found that plaintiff had 5/5 motor strength in all muscle groups, sensory and reflexes were intact, and he had normal grip strength at 5/5 bilaterally. Finally, a straight leg raise test was negative. The ALJ observed that Dr. Romeo concluded that plaintiff did not have any objectively identifiable etiology (cause) for his complaints of low back and leg pain.

The ALJ also noted that plaintiff has a history of right shoulder surgery in 2004. However, the ALJ again concluded that the objective evidence did not support the severity of plaintiff's allegations. The ALJ stated that records reflect that shortly after his shoulder surgery in 2004, plaintiff was doing well without any unusual complications. X-rays of the plaintiff's right shoulder in March 2010 showed only mild degenerative joint disease of the AC joint. Dr. Romeo noted that plaintiff had

a normal range of motion in his shoulders bilaterally, and normal grip strength and motor strength.   The ALJ observed that no physician has given plaintiff any permanent restrictions with regard to his shoulder.

The ALJ concluded that the severity of the pain alleged by plaintiff was not consistent with the other evidence of record.  He noted that plaintiff's ability to concentrate was not consistent with the severity of pain alleged, as well.  The ALJ stated that plaintiff had completed his Functional Report on his own, does not need reminders to take medication, prepares meals and drives an automobile.  His driving includes driving 20 minutes, one way, to shop for food, an effort that requires some ability to concentrate.  The ALJ also noted that plaintiff was able to handle a savings account and use a checkbook.  He needs no reminders to go places, has no problems with attention and is able to follow written and spoken instructions.  He further noted that plaintiff reported in his Function Report that he spends time with others, including playing cards and talking.  He reported no problems in getting along with others, and he lives with a person with Huntington's disease and helps to take care of her.  According to the ALJ, these activities are not consistent with the level of pain alleged by the claimant.

The ALJ also stated that the record indicated a diagnosis of obesity.  However, he held that the record is inconsistent with any physician stating that claimant's weight has limited or resulted in any impaired function.  Furthermore, though this is

a severe impairment, the ALJ noted that the record does not show that this impairment has impacted plaintiff's musculoskeletal system or general health as to cause his treating physician to diagnose him with impairments secondary to or in combination with obesity.

The ALJ concluded that, in order to accommodate plaintiff's back pain, he would be restricted to light exertional level work. The ALJ stated that, despite plaintiff's allegations of problems sitting and walking, the evidence did not support his claimed limitations in this regard because the objective medical evidence did not indicate any problems in this area and no physician has restricted plaintiff in this area. The ALJ concluded that the evidence did not support any limitations regarding plaintiff's shoulder in that he had a normal range of motion and x-rays showed only mild degenerative joint disease.

The ALJ relied on Grid Rules 202.14 and 202.21 to direct a finding that plaintiff was "not disabled." (Tr. 22). Plaintiff was 47 years old on his alleged onset date, defined as a younger individual, and 50 years old at the date of the ALJ's decision, defined as closely approaching advanced age. (Tr. 22, 44, 88). *See* 20 C.F.R. § 404, Subpart P, Appendix 2, § 200(g), (h)(1). Plaintiff has a high school education. (Tr.93). Transferability of job skills is not material because the applicable Grid rules would direct a finding of "not disabled" regardless of whether plaintiff has transferable job skills. *See* 20 C.F.R. § 404, Subpart P, Appendix 2, §§ 202.14, 202.2.

The Secretary bears the burden of establishing that plaintiff, who could not perform his past work, could perform alternative work in the national economy. Although this burden can sometimes be met through straightforward application of the Medical-Vocational Guidelines (the "grids"), the regulations regarding the implementation of the grids caution that they are only applicable under certain conditions. For example, the claimant must suffer primarily from an exertional impairment, without significant non-exertional factors. 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(e). As noted above, exclusive reliance on the grids is appropriate in cases involving only exertional impairments (impairments which place limits on an individual's ability to meet job strength requirements). *Heckler v. Campbell*, 461 U.S. 458, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983). Pain is a nonexertional impairment. *Walker*, 826 F.2d at 1003. Exclusive reliance on the grids is inappropriate when a claimant has a nonexertional impairment that significantly limits the claimant's basic work activities. *Swindle*, 914 F.2d at 226; *Foote*, 67 F.3d at 1559.

However, in this case, the ALJ found that plaintiff's nonexertional impairment did not significantly limit his basic work activities. Substantial evidence cited by the ALJ and set out above supports the adverse credibility determinations regarding plaintiff's allegations of pain. Although the ALJ gave the "benefit of the doubt" to plaintiff in finding he was limited to light work, he noted that Dr. Romeo could find

no etiology for his allegations of severe pain.  Likewise, with regard to the  adverse finding with regard to his allegations of problems sitting and walking, the ALJ found this claim to have been refuted by objective medical evidence which did not indicate any problems in this area.  He also determined that there was no medical evidence that plaintiff's alleged obesity resulted in any limitations.  The evidence considered by the ALJ in making these determinations is also set out above.  In addition to the medical evidence, the ALJ also considered the plaintiff's daily activities which he set out in his decision.  The ALJ found that they undermined plaintiff's allegations of disabling and distracting pain.

Therefore, there was substantial evidence that plaintiff could perform a full range of light work, and the ALJ provided a detailed and adequate reason for his findings.  Accordingly, upon review of the administrative record, and considering all of the plaintiff's arguments, the court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law.  Therefore, the decision is to be AFFIRMED.  A separate order will be entered.

DONE this 4th day of December, 2013.

HARWELL G. DAVIS, III
UNITED STATES MAGISTRATE JUDGE